## Case No. 7,364.

### The JOHN SANDERSON.

### The ALBERT G. LAWSON.

[4 Ben. 178.] [1]

District Court, S. D. New York. May, 1870.

D. McMahon, for the Lawson.

Beebe, Donohue & Cooke, for the Sanderson.

BLATCHFORD, District Judge. These are cross libels for a collision, $1,000 damages being claimed in the first case, and $1,800 damages in the second case. The collision took place in the channel between Blackwell's Island and Manhattan Island, near to the Blackwell's Island shore, about opposite between 78th street and 79th street, about 9 o'clock on the morning of Sunday, the 4th of October, 1868. The wind was fresh from the north-east, and the tide was running flood, the wind blowing against the tide. The Lawson had left New York City for a voyage through the said channel, and through Hell Gate, to the eastward. She was going with the tide and beating. The Sanderson had come from Nova Scotia, and had passed through Hell Gate bound to New York City. The whole contest in the case is as to whether the Sanderson was at anchor or not, at the time of the collision. I am satisfied, on the evidence, that she was, and that she had been thus at anchor for some two hours before the collision. She came to anchor under the direction of a competent licensed Hell Gate pilot, who was on board of her, and who anchored her, because she was unable to stem the strong flood tide, even sailing before the wind, she being a very dull sailer. When she anchored, which she did not do until the tide began to carry her backward, she clewed up or took in all her sails but her two jibs, her foretopsail, her foresail, and

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

her main sail. As she thus lay, her foretopsail was the only sail which was allowed to draw to any extent, her main sheet being hauled right aft. What drawing there was by her sails was proper and necessary, to keep her steady and prevent her from dragging her anchor afoul of the Croton water pipe, which crossed to Blackwell's Island a short distance astern of her. She was anchored as close to Blackwell's Island as it was proper for her to be, leaving abundance of channel room to the westward of her. She had a proper and competent watch kept on deck, and her wheel was properly attended to after she anchored. In this posture of things, the Lawson, in beating, ran across the bows of the Sanderson, from the New York side, and tacked near the Blackwell's Island shore, and so close to the bows of the Sanderson, that the flood tide carried the Lawson against the Sanderson, the port bow of the Lawson striking the port bow of the Sanderson, and the Lawson being, therefore, a little between the Sanderson and the Blackwell's Island shore, though nearly head and head. Prior to the collision, and when it was seen, from the Sanderson, that a collision was imminent, everything was done on board of the Sanderson, that could be done, to avoid the collision and mitigate its effects. The helm of the Sanderson was put hard a-starboard, so as to sheer her, as far as her anchor chain would allow, towards Blackwell's Island, and give the Lawson a chance to clear her to the westward, and ten fathoms more of chain were run out on the Sanderson, the fifteen fathom shackle being under water. The collision happened through the recklessness and negligence of those in charge of the Lawson. The evidence shows, that they were intent only on overhauling another schooner, which was beating through the channel ahead of them, that, in their reckless sailing, they nearly collided with that other schooner, close to the bows of the Sanderson, and that they jumped to the conclusion that the Sanderson was not at anchor, because they saw her sails up, and saw the tide running against her bows. Ordinary attention would have shown them that she was not under way, for she was in plain sight from their vessel, for a long distance, the shores of the channel being straight, and, as she was at anchor, her position was not at any time altered, as they were approaching. It was no fault in the Sanderson to leave her sails up, while at anchor thus, in broad daylight, at a place where she could be seen from a long distance, and when she left abundance of channel to the westward of her. After she came to anchor, other vessels beating through tacked short of her, and passed safely by. Nothing but gross inattention and want of care could have put the Lawson where she was, it being clear that the Sanderson was at anchor.

The libel against the Sanderson must be dismissed, with costs. In the case against

the Lawson, there must be a decree for the libellants, with costs, with a reference to ascertain their damages.